# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION

| | |
|---|---|
| ERIC ESANCY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 5: 05CV26 |
| JAMES T. QUINN, | ) ) ) |
| Defendant. | ) ) |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
### MOTION TO DISMISS AND MOTION FOR MORE DEFINITE STATEMENT

Defendant James T. Quinn ("Mr. Quinn" or "Defendant") submits this Memorandum of Law in support of his motion to dismiss Plaintiff Eric Esancy's claims of fraud/misrepresentation and violation of the Unfair and Deceptive Trade Practices Act (the "UDTPA") (N.C.G.S. § 75-1.1 *et seq.*) for failure to state a claim and his motion for more definite statement.

### BACKGROUND

This is a tort action arising out of Plaintiff's mistaken belief that he was denied an employment opportunity and a business opportunity because of the conduct of Mr. Quinn. Plaintiff asserts claims for defamation, fraud/misrepresentation, tortious interference with contract, violation of the UDTPA, and civil conspiracy. Mr. Quinn is the former Chief Sales Officer of Private Business, Inc. ("PBI"). Complaint ¶ 12.[1] PBI is a publicly-traded corporation in the banking industry, with its principal place of business located in Williamson County, Tennessee. Complaint ¶¶ 10-11.

---

[1] A copy of the Complaint is attached as **Exhibit 1**.




PBI has a contractual relationship with the Bank of Granite, a bank for whom Plaintiff has provided services. Complaint ¶¶ 13. Plaintiff alleges that Mr. Quinn made false and misleading statements to John Gabriel, the Senior Vice-President of the Bank of Granite, in the course of a discussion with Mr. Gabriel in which Mr. Gabriel expressed the Bank's dissatisfaction with Plaintiff's performance. Complaint ¶ 14. Plaintiff also alleges that Mr. Quinn's statements prevented him from obtaining employment at PBI. Complaint ¶¶ 12, 16. Additionally, Plaintiff contends that Jeff DeWald of Adpro terminated an agreement with Plaintiff whereby Plaintiff would promote Adpro to banks in exchange for performance-based compensation. Complaint ¶¶ 17, 21. Plaintiff alleges that, because of Mr. Quinn's statements, his contract was terminated after he introduced Adpro to PBI, but before Adpro and PBI entered into a contract, which resulted in a lost opportunity for compensation. Complaint ¶¶ 17, 19, 21.

## ARGUMENT

### Motion to Dismiss

**I.   Standard for Motion to Dismiss**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint. Dealers Supply Co., Inc. v. Cheil Indus., Inc., 348 F. Supp. 2d 302, 584 (M.D.N.C. 2004); Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004). The motion admits the truth of all relevant and material allegations, but asserts that such facts do not constitute a cause of action. See Dealers Supply, 348 F. Supp. 2d at 584. In order to withstand a 12(b)(6) motion, the complaint must provide sufficient notice of the events and circumstances from which the claim arises, and must state allegations sufficient to satisfy the substantive elements of at least some recognized claim. Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991)(court will construe factual allegations in the light most favorable to

plaintiff, but is not so bound to the complaint's legal conclusions and will dismiss a claim if it appears that the plaintiff would not be entitled to relief under any facts which could be proved in support of the claim).

## II. The Complaint Fails to State a Claim for Fraud/ Misrepresentation.

### A. Plaintiff Has Not Alleged Facts to Satisfy the Elements of Fraud/ Misrepresentation.

In North Carolina, the requisite elements of a fraud claim are: (1) a material misrepresentation of a past or existing fact; (2) the representation must be definite and specific; (3) the representation must be made with knowledge of its falsity or in culpable ignorance of its truth; (4) the misrepresentation was made with the intention that it should be acted upon; (5) the recipient of the misrepresentation reasonably relied upon it and acted upon it; and (6) the misrepresentation resulted in damage to the recipient. Estate of Williams-Moore, 335 F. Supp. 2d at 649 (granting motion to dismiss); see also Angell v. Kelly, 336 F. Supp. 2d 540, 548 (M.D.N.C. 2004). The only party who can assert a claim for fraud is the party to whom the misrepresentation was made and who relied on that misrepresentation to his detriment. Id.; see also Perry v. Carolina Builders Corp., 493 S.E.2d 814, 818 (N.C. Ct. App. 1997)(affirming dismissal and noting "To be sufficient, fraud claim must allege certain essential elements, including, *inter alia*, that the plaintiff reasonably relied upon the representation and acted on it"); Spartan Leasing Inc. of North Carolina v. Pollard, 400 S.E.2d 476, 478 (N.C. Ct. App. 1991)(affirming summary judgment dismissing fraud claim).

The basis for Plaintiff's fraud/ misrepresentation claim is that Mr. Quinn is liable for "[m]aking false or misleading statements about the Plaintiff to the Bank of Granite and/or its agents" and "[m]aking false or misleading statements to other individuals or corporations with whom the Plaintiff was involved." Complaint ¶ 31. Nowhere in the Complaint does Plaintiff

- 3 -

allege that Mr. Quinn made a misrepresentation to *Plaintiff* on which *Plaintiff* relied to his detriment. Cf. Alliance, 335 F. Supp. 2d at 649; Perry, 493 S.E.2d at 818. Absent such allegations, Plaintiff's claim fails.

### B. Plaintiff's Allegations of Fraud/ Misrepresentation Lack Sufficient Particularity.

Fed. R. Civ. P. 9 provides, "In all averments of fraud of mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This rule, which imposes a more stringent pleading standard than Fed. R. Civ. P. 8(a), requires a plaintiff to "plead the time, place, and contents of the alleged fraudulent representation, as well as the identity of each person making the misrepresentation and what was obtained thereby." Dealers Supply, 348 F. Supp. 2d at 589 (dismissing misrepresentation claim where allegations not pled with particularity). The purpose of Rule 9 is to provide the specificity necessary to allow a party to properly defend themselves. See Liner v. DiCresce, 905 F. Supp. 280, 287 (M.D.N.C. 1994)("A defendant must be given sufficient notice of the time, place and content of the alleged fraud. Without this notice, a defendant would be unable to properly prepare a defense.").

Here, Plaintiff's claim fails for want of particularity. Plaintiff does not allege the time, place or circumstances of the alleged misrepresentations or the content of the misrepresentations. Plaintiff's blanket allegations of "false and misleading statements" do not suffice. Indeed, the Complaint contains no allegation specifying what statement(s) Mr. Quinn made to anyone other than those he allegedly made to Plaintiff. Because the allegations lack sufficient particularity, the Court should dismiss Plaintiff's claim for fraud/ misrepresentation.

- 4 -
J JPK 66931 v1
2826492-000019 02/28/2005
Case 5:05-cv-00026-RLV-CH   Document 6   Filed 03/01/05   Page 4 of 17

## III. The Complaint Fails to State a Claim Under the UDTPA.

North Carolina's Unfair and Deceptive Trade Practices Act, codified at N.C.G.S. § 75-1.1 *et seq.* (the "UDTPA"), provides that "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." To establish a prima facie claim under the UDTPA, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001)(affirming summary judgment dismissing UDTPA claim). The purpose of the UDTPA is "to declare deceptive acts or practices in the conduct of any trade or commerce in North Carolina unlawful, to provide civil means to maintain ethical standards of dealings between persons engaged in business and the consuming public within this state, and to enable a person injured by deceptive acts or practices to recover treble damages." United Labs, Inc. v. Kuykendall, 403 S.E.2d 104, 109 (N.C. Ct. App. 1991). Although the Act is expansive, it is not intended to apply to all wrongs in a business setting. See Hajmm Co. v. House of Raeford Farms, Inc., 403 S.E.2d 483, 492 (N.C. 1991)(affirming dismissal). Each element must be satisfied. Dalton, 548 S.E.2d at 711 (finding no UDTPA violation).

Plaintiff alleges that Mr. Quinn is liable under the UDTPA for "unfair and deceptive trade practices." Rather than specifically identifying what conduct by Mr. Quinn is actionable under the UDTPA, Plaintiff broadly refers the allegations in Paragraphs 1-40 of the Complaint. Complaint ¶¶ 41-43. Those Paragraphs allege claims for defamation, fraud/misrepresentation and tortious interference with contract based on unspecified "false and misleading" statements made by Mr. Quinn about Plaintiff.

- 5 -

To the extent Plaintiff alleges that this conduct constitutes a *deceptive* trade practice[2], his claim fails. It is well-settled that recovery for a deceptive trade practice "is limited to those situations when a plaintiff detrimentally relied upon a statement or misrepresentation and he or she 'suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation.'" See Forbes v. The Par Ten Group, Inc., 394 S.E.2d 643, 651 (N.C. Ct. App. 1990); see also Hageman v. Twin City Chrysler-Plymouth, Inc., 681 F. Supp. 303, 308 (M.D.N.C. 1988)(to prove actual causation, a plaintiff must prove that he or she detrimentally relied on the defendant's deceptive statement or misrepresentation). Stated differently, the deceptive act or practice must have actually misled or deceived the *plaintiff* to satisfy the causation element. Hageman, 681 F. Supp. at 308 (affirming directed verdict where there was no evidence that plaintiff detrimentally relied on the statements defendant allegedly made).

As discussed *supra*, nowhere in the Complaint does Plaintiff allege that Mr. Quinn made a misrepresentation or deceptive statement to *Plaintiff* on which *Plaintiff* relied to his detriment. Absent such allegations, Plaintiff's UDTPA claim fails to the extent it is a claim that Mr. Quinn engaged in a deceptive trade practice. Id.

## Motion for More Definite Statement

Fed. R. Civ. P. 8(a)(2) provides that a complaint need provide only "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has interpreted Rule 8 not to require a claimant to set out in detail the facts upon which he bases his claim. Conley v. Gibson, 335 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957); Turner v. Randolph County, 912 F. Supp. 182, 184 (M.D.N.C. 1995). At a minimum, however, a complaint must give the defendant fair notice of what the plaintiff's claim is and the grounds

---

[2] Unfair and deceptive are distinct characteristics of action under the UDTPA. An act is unfair if it is unethical and unscrupulous. Dalton, 353 N.C. at 656. An act is deceptive if it has a tendency to deceive. Id.

- 6 -

J JPK 66931 v1
2826492-000019 02/28/2005

upon which it rests. Id. Thus, whether a complaint satisfies Rule 8(a)(2) is to be determined by whether the pleadings provide fair notice to the opposing party. Conley v. Gibson, 335 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957); Turner v. Randolph County, 912 F. Supp. 182, 184 (M.D.N.C. 1995). Where the pleadings do not provide fair notice, a court may require the plaintiff to amend the pleadings to provide sufficient detail of what the claim is and the grounds upon which it rests. Fed. R. Civ. P. 12(e).

As pled, the Complaint does not provide Mr. Quinn with fair notice of Plaintiff's claim of defamation. The Complaint does not allege any statement published by Mr. Quinn to anyone other than Plaintiff. Nor does the Complaint identify the alleged recipients of the defamatory statements.[3] At most, Plaintiff makes vague assertions that Mr. Quinn made "false and demeaning statements" (Complaint ¶ 16) and "false, negative and demeaning statements" (Complaint ¶ 21). Without more detail, such as identifying the allegedly defamatory statements and the recipients of those statements, Mr. Quinn is unable to respond to the allegations. Accordingly, the Court should grant Mr. Quinn's motion for more definite statement.

---

[3] The allegation that Mr. Quinn advised Plaintiff that "he had discussed the performance of Plaintiff with John Gabriel" (Complaint ¶ 14) is the most specific allegation. Yet, it, too, lacks the minimum detail necessary for a response by Mr. Quinn.

-7-

J JPK 66931 v1
2826492-000019 02/28/2005
Case 5:05-cv-00026-RLV-CH   Document 6   Filed 03/01/05   Page 7 of 17

## CONCLUSION

For the foregoing reasons, Mr. Quinn respectfully requests that Plaintiff's claims of fraud/ misrepresentation and violations of the UDTPA be dismissed with prejudice and that the Court grant Mr. Quinn's motion for more definite statement.

Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

*/s/ Jennifer P. Keller*

Jennifer P. Keller (N.C. Bar No. 24345)
207 Mockingbird Lane
P. O. Box 3038 CRS
Johnson City, Tennessee 37602
(423) 928-0181

and

Matthew J. Sweeney
April Y. Berman
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
Commerce Center, Suite 1000
211 Commerce Street
Nashville, Tennessee 37201
(615) 726-5600
*Motions for Pro Hac Vice Admission Pending*

*Attorneys for James T. Quinn*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing has been served upon the counsel for parties in interest herein by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination:

C. Gary Triggs
N. C. S. B. #5865
Post Office Drawer 579
Morganton, North Carolina 28680

*Jennifer P. Keller*
Jennifer P. Keller

Dated: February 28th, 2005.

NORTH CAROLINA

COUNTY OF IREDELL

FILED
2005 JAN 26 AM 10: 33
IREDELL COUNTY C.S.C.
BY_____

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
05 CVS ____ 5CV 00233

ERIC ESANCY,
Plaintiff

vs.

JAMES T. QUINN,
Defendant.

COMPLAINT
(Jury Trial Demanded)

THE PLAINTIFF for cause of action and claim for relief alleges and say as follows:

## I.
## PARTIES

1. The Plaintiff is a citizen and resident of Iredell County presently having a mailing address as at Post Office Box 3245, Moorseville, North Carolina 28117.

2. That upon information and belief, the Defendant is a citizen and resident of the State of Tennessee with the last known address of 1043 Stonebridge Park Drive, Franklin, Tennessee 37069-4010.

## II.
## JURISDICTION

4. All preceding paragraphs are incorporated herein by reference as if fully set forth herein.

5. That this Court has jurisdiction over the subject matter and the parties in this cause.

6. The Defendant has, upon information and belief, established continuing business relationships with the Plaintiff and other business throughout North Carolina in Iredell County and has therefore had sufficient minimum contacts to establish jurisdiction.

## III.
## GENERAL ALLEGATIONS

7. All preceding paragraphs are incorporated herein by reference as if fully set forth herein.

8. Plaintiff at all relevant times has been involved in various businesses including financial management companies dealing primarily with Banks or Banking Institutions, in which reputation is an essential ingredient in successful operation of business a venture.

9. At all relevant times the Plaintiff possessed a good character and reputation not only within his community but within the business community in which he operated.

10. The Defendant was previously associated as an employee or agent of Private Business, Inc., a corporation located at 9020 Overlook Blvd., Brentwood, Tennessee 37027, which was at all relevant times involved in a business or businesses of the same or similar type as that engaged in by the Plaintiff.

11. That upon information and belief, Private Business, Inc., hereinafter "PBI" is a publically credited corporation designated as PBIZ on NASDAQ.

12. That the Plaintiff in February or March of 2004, had an opportunity to become involved in a business relationship with "PBI", which placed the Plaintiff in a position of having to deal with the Defendant, who at all relevant times was the Chief Sales Officer of "PBI".

13. In late February or early March of 2004, the Plaintiff received a call from the Defendant, acting as agent for "PBI" in which the Defendant accused the Plaintiff of past negative performance and sighted deficiencies of the Plaintiff as the reason of the termination by Bank of Granite of their contract with "PBI".

14. The Defendant advised the Plaintiff that he had discussed the performance of the Plaintiff with John Gabriel, Senior Vice-President of Bank of Granite, and had learned from Gabriel that allegedly the Bank of Granite was very dissatisfied with the performance of the Plaintiff and had sought to terminate their contract due to those issues.

F:\Share\A Civil\Esancy, Eric.Various.HDO\A PBI Quinn,James\complaint 012505.wpd

15. The Plaintiff contacted John Gabriel who both orally and in writing, denied ever having had any such conversation and in fact, he indicated that at all times he had been satisfied with the way in which the Plaintiff had handled his business relationship with the Bank of Granite.

16. That upon information and belief, the Defendant utilizing his position as an officer with "PBI" sought to protect his personal interest by systematically attempting to undermine the credibility of the Plaintiff through the making of false and demeaning statements which he knew or by reasonable diligence should have known, were untrue.

17. That approximately six months prior to the conversation with the Defendant in February or March, the Plaintiff had entered into a contract with Jeff DeWald to assist in the promotion of a business enterprise known as Adpro, which was a bank product being presented to banks within the industry with which the Plaintiff had been involved. One of the primary companies introduced by the Plaintiff to Adpro was "PBI".

18. That at all relevant times the purpose for the involvement of the Plaintiff with Adpro and "PBI" was to negotiate sales and provide the Plaintiff with an opportunity to deliver sales relationships to "PBI" in return for performance based compensation.

19. That unexpectedly after introducing the representatives of Adpro to "PBI", Adpro terminated their relationship with the Plaintiff and thereafter, upon information and belief, entered into an agreement directly with "PBI" which had the effect of eliminating the Plaintiff's contract and negating any opportunity for compensation.

20. That upon information and belief, Jeff DeWald is presently an employee of or agent for "PBI", having sold an interest in the Adpro product line and his company to "PBI".

21. That upon information and belief, the basis for the termination of the business relationship between the Plaintiff and Jeff DeWald/Adpro was based in whole or in part upon false, negative and misleading statements made by the Defendant, individually and in his capacity as an agent for "PBI".

### IV.
### FIRST CAUSE OF ACTION
### (DEFAMATION OF CHARACTER)

22. All preceding paragraphs are incorporated herein by reference as if fully set forth herein.

23. That the Defendant, upon information and belief, engaged in a plan, scheme or design, the intention of which was to demean the character of the Plaintiff in order to protect or promote the Defendants own interest, said acts include but are not limited to the following:

   A. Making false, slanderous or misleading statements about the abilities, training or expertise of the Plaintiff;

   B. Engaging in a pattern of deception and false statements to various customers of the Plaintiff, including but not limited to the Bank of Granite;

   C. That upon information and belief, engaging in other acts which will be discovered during the course of discovery.

24. That at all relevant times the Defendant knew, or by reasonable diligence should have known, that the statements being made by him were calculated to demean and would in fact demean the character and reputation of the Plaintiff, which was important not only to the Plaintiffs individual well being but to his ability to conduct business within the banking community.

25. That at all relevant times the Defendant knew that the statements, accusations or innuendo disseminated by the Defendant was false; however, despite such knowledge he persisted in his efforts with the full intention of demeaning the character and reputation of the Plaintiff and thus prohibiting the Plaintiff from being in a position to compete with the Defendant.

26. That as a direct and proximate result of the acts and omissions on the part of the Defendant, the Plaintiff did in fact suffer defamation of character which has interfered with his ability to conduct business.

27. That as a direct and proximate result of the acts and omissions on the part of the Defendant, the Plaintiff has suffered compensatory damages in an amount in excess of $10,000.00.

28. That the acts and omissions on the part of the Defendant are so outrageous and so egregious as to entitle the Plaintiff to punitive damages in an amount in excess of $10,000.00.

## V.
## SECOND CAUSE OF ACTION
## (FRAUD/MISREPRESENTATION)

29. All preceding paragraphs are incorporated herein by reference as if fully set forth herein.

30. That at all relevant times the Defendant engaged in a scheme, plan or design to disseminate false or fraudulent information, the purpose of which was to protect the Defendants position with "PBI" and/or promote the Defendant at the expense of the Plaintiff.

31. That the fraudulent acts or misrepresentations include but are not limited to the following:

    A. Making false or misleading statements about the Plaintiff to the Bank of Granite and/or its agents;

    B. Making false or misleading statements to other individuals or corporations with whom the Plaintiff was involved;

32. That the acts and omissions on the part of the Defendant constitute fraud and misrepresentation at a time when the Defendant knew or by reasonable diligence should have known that such acts and omissions were fraudulent or misleading.

33. That as a direct and proximate result of the acts and omissions on the part of the Defendant, the Plaintiff has suffered compensatory damages in an amount in excess of $10,000.00.

34. That the acts and omissions on the part of the Defendant are so outrageous and so egregious as to entitle the Plaintiff to punitive damages in an amount in excess of $10,000.00.

## VI.
## THIRD CAUSE OF ACTION
## (TORTIOUS INTERFERENCE WITH CONTRACT)

35. All preceding paragraphs are incorporated herein by reference as if fully set forth herein.

36. That at all relevant times the Plaintiff had various contracts with various business entities including but not limited to Jeff DeWald/Adpro and/or others that were viable business contracts from which the Plaintiff received financial remuneration for sales that he generated.

37. That at all relevant times the Defendant knew of the contractual relationship between the Plaintiff with various business entities and despite such knowledge, set about to interfere with or disrupt the contractual involvement by the Plaintiff with those various entities.

38. That as a direct and proximate result of the acts and omissions on the part of the Defendant, the Plaintiff's contract with Jeff DeWald/Adpro was terminate and in addition, the Plaintiff lost various other contractual agreements with which he was involved.

39. That as a direct and proximate result of the acts and omissions on the part of the Defendant, the Plaintiff has suffered and continues to suffer compensatory damages in an amount in excess of $10,000.00.

40. That the acts and omissions on the part of the Defendant are so outrageous and so egregious as to entitle the Plaintiff to punitive damages in an amount in excess of $10,000.00.

## VII.
## FOURTH CAUSE OF ACTION
## (UNFAIR AND DECEPTIVE TRADE PRACTICES)

41. All preceding paragraphs are incorporated herein by reference as if fully set forth herein.

42. That at all relevant times the Defendant was engaged in commerce and therefore subject to the provisions of N.C.G.S. 75-1.1 (Unfair and Deceptive Trade Practices Act).

43. That upon information and belief the acts and omissions on the part of the Defendant constitute unfair and deceptive trade practices within the meaning of N.C.G.S. 75-1.1 et sec.

44. That as a direct and proximate result of the unfair and deceptive trade practices on the part of the Defendant, the Plaintiff has suffered compensatory damages in an amount in excess of $10,000.00.

45. That pursuant to the provisions of N.C.G.S. 75-1.1 et sec. all damages recovered should be trebled and in addition thereto the Plaintiff entitled to recover all cost including a reasonable attorneys fee.

46. That the acts and omissions on the part of the Defendant are so outrageous and so egregious as to entitle the Plaintiff to recover punitive damages in an amount in excess of $10,000.00.

## VIII.
## FIFTH CAUSE OF ACTION
## (CIVIL CONSPIRACY)

47. All preceding paragraphs are incorporated herein by reference as if fully set forth herein.

48. That upon information and belief, the Defendant conspired with one or more persons to engage in acts and omissions, the intention of which was to damage or destroy the business and reputation of the Plaintiff, apparently for the selfish motivation of protecting the Defendants employment and/or enhancing the Defendants career.

49. That upon information and belief the Defendant and/or others engaged in one or more acts which were unlawful or in lawful acts which were engaged in in an improper manner, thus constituting civil conspiracy.

50. That as a direct and proximate result of civil conspiracy on the part of the Defendant the Plaintiff has suffered compensatory damages in an amount in excess of $10,000.00.

51. That the acts and omissions on the part of the Defendant are so outrageous and so egregious as to entitle the Plaintiff to recover punitive damages in an amount in excess of $10,000.00.

WHEREFORE, the Plaintiff respectfully prays the Court as follows:

1. That the Plaintiff have and recover of the Defendant compensatory damages in an amount in excess of $10,000.00.

2. That the Plaintiff have and recover of the Defendant punitive damages in an amount in excess of $10,000.00.

3. That the acts and omissions on the part of the Defendant be determined to violate N.C.G.S. 75-1.1 (Unfair and Deceptive Trade Practice Act) and all damages recovered by the Plaintiff be trebled.

4. That the Plaintiff have and recover of the Defendant all cost incurred in this action, including a reasonable attorneys fee.

F:\Share\A Civil\Esancy, Eric.Various.HDO\A PBI Quinn,James\complaint 012505.wpd

5. That the Plaintiff be afforded a trial by jury on all issues.

6. For such other and further relief as the Court shall deem just and proper.

THIS THE 25th day of January, 2005.

*C. GARY TRIGGS, P.A.*

By: _____
C. Gary Triggs
Attorney for Plaintiff
N.C.S.B.# 5865
Post Office Drawer 579
Morganton, North Carolina 28680
(828) 433-0872

F:\Share\A Civil\Esancy, Eric.Various.HDO\A PBI Quinn,James\complaint 012505.wpd