**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO.: 5:05CV26**

| | | |
|---|---|---|
| ERIC ESANCY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| JAMES T. QUINN, | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Defendant's "Motion to Dismiss Plaintiff's Defamation Claims" and "Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Defamation Claims," both filed September 30, 2005. [Documents ## 21, 22]. Plaintiff did not file a Response. This Motion is now ripe for disposition by the Court.

Having carefully considered the arguments of the parties, the record, and the applicable authority, the Court will <u>grant</u> Defendant's Motion to Dismiss.

**I. FACTUAL AND PROCEDURAL HISTORY**

For purposes of this Motion to Dismiss, the Court accepts the following facts derived from Plaintiff's Amended Complaint as true. *See Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 189 (4th Cir. 2002) (noting that "at the motion to dismiss stage, a court must accept the allegations in the complaint as true and view the complaint in the light most favorable to the plaintiff").

Plaintiff Eric Esancy ("Plaintiff" or "Esancy") is involved in various businesses, including financial management companies, dealing primarily with banks and banking

1

institutions. (Am. Compl. ¶ 6). One such banking institution with whom Plaintiff worked was the Bank of Granite. ( *Id.* ¶ 22).

Defendant James Quinn ("Defendant" or "Quinn") was formerly an employee or agent of Private Business, Inc. ("PBI"), which is a corporation engaged in business enterprises similar to those engaged in by Plaintiff. (*Id.* ¶ 8). In October 2003, Plaintiff became involved in a business relationship with PBI, which resulted in Plaintiff having business dealings with Defendant, the Chief Sales Officer of PBI.[1] (*Id.* ¶ 10).

Sometime in the late summer or fall of 2003, Plaintiff entered into a contract with Jeff DeWald, who worked for a business named Adpro. (*Id.* ¶ 15). Adpro was a bank product being presented to banks and strategic partners within the industry. (*Id.*). Plaintiff was to assist in the promotion of Adpro. (*Id.*). Plaintiff introduced PBI to Adpro in order to negotiate sales and deliver sales relationships to PBI. (*Id.* ¶¶ 15, 16). In return, Plaintiff was to receive performance-based compensation. (*Id.* ¶ 16). After introducing Adpro to PBI, Adpro terminated its relationship with Plaintiff and directly entered into an agreement with PBI, which effectively eliminated Plaintiff's opportunity for compensation. (*Id.* ¶ 17). The termination of the business relationship between Adpro and Plaintiff was based in whole or part upon false, negative, and misleading statements made by Defendant individually and in his capacity as an agent for PBI. (*Id.* ¶ 19).

In late February or early March of 2004, Defendant, acting as an agent for PBI, called Plaintiff and accused him of past negative performance. (*Id.* ¶ 11). Defendant further advised

---

[1]The Court is still unsure what these business deals entailed or in what capacity Plaintiff served during these deals because Plaintiff's Amended Complaint still lacks specificity in that regard.

Plaintiff of a conversation Defendant had with John Gabriel, Senior Vice-President of the Bank of Granite. Specifically, Defendant told Plaintiff that during his conversation, Defendant told Mr. Gabriel that Plaintiff had a terrible reputation within the industry and created bad situations at various banks, with which he had been associated and which required the Defendant to clean-up after Plaintiff. (*Id.* ¶ 22(A)). Defendant further allegedly advised Mr. Gabriel that Plaintiff's failure to properly supervise his accounts had resulted in Plaintiff losing PBI's business. (*Id.* ¶ 22(B)). Defendant also stated that Plaintiff's reputation with various banks, including the Bank of Granite, was very poor. (*Id.* ¶ 22(C)). Mr. Gabriel responded by allegedly telling Defendant that the Bank of Granite was dissatisfied with Plaintiff's performance, which resulted in the Bank terminating its contract with PBI. (*Id.* ¶ 12).

After being advised of the purported conversations between Defendant and Mr. Gabriel, Plaintiff personally contacted Mr. Gabriel, who orally and in writing denied ever having such conversations with Defendant and, in fact, indicated that at all times he was satisfied with the way Plaintiff handled his business relationship with the Bank. (*Id.* ¶ 13).

Defendant also made the same or similar statements as purportedly discussed with Mr. Gabriel to other customers or entities with whom Plaintiff was involved, with the intent to defame Plaintiff's good character. (*Id.* ¶¶ 23, 24). Moreover, Defendant sent one or more of his employees to various banks, including the Bank of Granite, to ask questions about their involvement with Plaintiff in order to discover negative information that could be used or disseminated by Defendant to promote his interests over Plaintiff's. (*Id.* ¶ 25). Despite knowing that the statements, accusations, or innuendo regarding Plaintiff were false, Defendant persisted in his efforts to demean Plaintiff's character and reputation in order to prohibit Plaintiff from

3

directly competing with Defendant. (*Id.* ¶ 27). Plaintiff further maintains that "the Defendant utilizing his position as an officer with PBI sought to protect his personal interest by systematically attempting to undermine the credibility of the Plaintiff through the making of false and demeaning statements which he knew or by reasonable diligence should have known, were untrue." (*Id.* ¶ 14).

Based on these facts, on January 26, 2005, Plaintiff filed a Complaint in the Superior Court Division of Iredell County, seeking to recover compensatory and punitive damages, as well as attorney's fees, for defamation of character, fraud/misrepresentation, tortious interference with contract, unfair and deceptive trade practices, and civil conspiracy. On February 25, 2005, Defendant removed the action to this Court. Subsequently, on March 1, 2005, Defendant filed a Motion to Dismiss and Motion for More Definite Statement. In an Order dated July 21, 2005, the Court: (1) granted Defendant's Motion to Dismiss Plaintiff's fraud/misrepresentation claim; (2) granted Defendant's Motion to Dismiss Plaintiff's unfair and deceptive trade practices claim with regard to Defendant's alleged *deceptive* acts; and (3) granted Defendant's Motion for More Definite Statement and gave Plaintiff thirty days to submit a more definite statement of allegations supporting both his unfair trade practices claim and Plaintiff's defamation claim. In accordance with this Order, on August 19, 2005, Plaintiff filed an Amended Complaint, alleging claims for defamation of character, tortious interference with contract, unfair and deceptive trade practices, and civil conspiracy.

## II. DISCUSSION

Defendant now moves to dismiss Plaintiff's defamation claim, arguing that Plaintiff's allegations are insufficient to maintain a cause of action for defamation. As noted above,

4

Plaintiff did not respond to Defendant's Motion to Dismiss.

**A.     Standard of Review**

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a plaintiff's complaint. *Suarez v. Charlotte-Mecklenburg Schs.*, 123 F. Supp. 2d 883, 885-86 (W.D.N.C. 2000) (citing *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). In considering a Rule 12(b)(6) motion to dismiss, the court must take the allegations in the complaint as true and construe the facts alleged in the complaint in the light most favorable to the plaintiff. *GE Inv. Private Placement v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). "[Dismissal may occur] only if it appears beyond doubt that the plaintiff[ ] can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Jackson v. Blue Dolphin Commc'ns of N.C., L.L.C.*, 226 F. Supp. 2d 785, 788-89 (W.D.N.C. 2002) (brackets in original) (quoting *Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997)).

To survive a Rule 12(b)(6) motion, "a complaint need only outline a recognized legal or equitable claim which sufficiently pinpoints the time, place, and circumstances of the alleged occurrence and which, if proven, will justify some form of relief." *Jackson*, 226 F. Supp. 2d at 789 (citation omitted). A motion to dismiss is not limited to claims of law which are obviously unsupportable; rather if, as a matter of law, it is obvious that no relief could be granted under any set of facts alleged by the plaintiff, the claim must be dismissed. *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S. Ct. 1827 (1989)).

Significantly, although a court must accept as true all material factual allegations in the complaint, the court does not need to accept a plaintiff's "conclusory allegations regarding the legal effect of the facts alleged." *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995). In sum,

5

"[d]ismissal under Rule 12(b)(6) is proper when on its face the complaint reveals either no law

supports the plaintiff's claim or the absence of fact sufficient to make a good claim, or when

some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Andrews v. Elliot*,

109 N.C. App. 271, 274, 426 S.E.2d 430, 432 (1993).

## B.    Pleading Defamation

"'The term defamation includes two distinct torts, libel and slander.  In general, libel is

written while slander is oral.'" *Iadanza v. Harper*, 169 N.C. App. 776, 781, 611 S.E.2d 217, 222

(2005) (quoting *Tallent v. Blake*, 57 N.C. App. 249, 251, 291 S.E.2d 336, 338 (1982)).  To

prevail on a defamation claim, a plaintiff must allege and prove that the defendant made a false

and defamatory statement of or concerning the plaintiff, which was published to a third person,

and caused injury to the plaintiff's reputation.  *Smith-Price v. Charter Behavioral Health Sys.*,

164 N.C. App. 349, 356, 595 S.E.2d 778, 783 (2004) (quoting *Tyson v. L'Eggs Prods., Inc.*, 84

N.C. App. 1, 10-11, 351 S.E.2d 834, 840 (1987)).  "To be actionable, a defamatory statement

must be false and must be communicated to a person or persons other than the person defamed."

*Andrews*, 109 N.C. App. at 274, 426 S.E.2d at 432.

When pleading a defamation claim, the alleged defamatory statement made or published

by the defendant does not have to be set out verbatim in the plaintiff's complaint if alleged

"'substantially *in haec verba*, or with sufficient particularity to enable the court to determine

whether the statement was defamatory.'" *Id.* (quoting *Stutts v. Duke Power Co.*, 47 N.C. App. 76,

83-84, 266 S.E.2d 861, 866 (1980)).  Moreover, allegations of time and place are material for

purposes of testing the sufficiency of a pleading and, therefore, should be plead in the complaint.

Fed. R. Civ. P. 9(f); *see also Stutts*, 47 N.C. App. at 83, 266 S.E.2d at 866 (finding that use of

6

the date "September 10, 1976" satisfied the time requirement and allegation of "the McGuire

Nuclear Construction Project" was sufficient for the place requirement of Rule 9(f)).

## C.     Plaintiff's Allegations of Defamation

As noted above, Plaintiff claims that Defendant defamed him to John Gabriel of the Bank

of Granite, as well as to "various other customers or entities with which Plaintiff was involved."

(Am. Compl. ¶¶ 20-27).

### 1.     Defendant's statements to John Gabriel

Plaintiff contends that during a conversation with Defendant in February or March of

2004, Defendant advised Plaintiff that during his conversations with John Gabriel of the Bank of

Granite, Defendant told Mr. Gabriel that Plaintiff had a terrible reputation within the industry,

that Plaintiff created bad situations in various banks, and Plaintiff's failure to properly supervise

his accounts resulted in a loss of business by PBI.  (Am. Compl. ¶¶ 11, 12, 22).  Plaintiff then

admits that he contacted Mr. Gabriel directly, and Mr. Gabriel orally and in writing denied ever

having any such conversations with Defendant.  (*Id.* ¶¶ 13, 22(C)).  Moreover, Plaintiff admits in

his Amended Complaint that Defendant never made the alleged defamatory statements to Mr.

Gabriel.  (*See* Am Compl. ¶ 22(C)) (alleging ". . . when asked specifically what banks the

Defendant was referring to, he refused at first to tell the Plaintiff, but then advised the Plaintiff

about *purported* conversations that had taken place with John Gabriel at the Bank of Granite,

*which the Plaintiff now knows were false*") (emphasis added).  As noted above, to sufficiently

allege a defamation claim, Plaintiff must allege that the false, defamatory statements were

published to a third party.  *Andrews*, 109 N.C. App. at 274, 426 S.E.2d at 432.  Since Plaintiff

admits that Defendant never made any of the alleged defamatory statements to Mr. Gabriel,

7

Plaintiff has not sufficiently pled a defamation claim.[2]

Additionally, although Plaintiff alleged the time and place when he was made aware of the alleged defamatory statements - in February or March of 2004, during a phone conversation with Defendant - Plaintiff has failed to allege the date on which the alleged defamatory statements were communicated from Defendant to Mr. Gabriel. (Am. Compl. ¶¶ 11-13, 22). In order to properly plead a defamation claim, Plaintiff must state the time and place of the alleged defamatory communication. FED. R. CIV. P. 9(f).

In sum, since Plaintiff admits that Defendant never made the alleged defamatory statements to Mr. Gabriel and in light of Plaintiff's failure to state the time and place of any such alleged defamatory statements, the Court finds that dismissal of Plaintiff's defamation claim with regard to the alleged statements made by Defendant to Mr. Gabriel is proper.

## 2. Defendant's statements to "other customers or entities"

Plaintiff further alleges that "the Defendant made the same of [sic] similar statements as set forth above to various other customers or entities with which the Plaintiff was involved, including but not limited to the Bank of Granite, with the clear intention to defame the good character of the Plaintiff." (Am. Compl. ¶ 23). Significantly, Plaintiff does not allege the specific individuals to whom the alleged defamatory statements were made, nor does he allege the time or place of the defamatory communications. Although Plaintiff is not required to set out verbatim the defamatory statements, in order to overcome a Rule 12(b)(6) motion, at a minimum,

---

[2]The Court notes that Plaintiff's Amended Complaint provides inconsistent statements, in that Plaintiff first alleges that Defendant made defamatory comments to Mr. Gabriel but then immediately admits that such statements did not occur. However, since Plaintiff was given an opportunity to amend his Complaint to more clearly allege his defamation claim and in light of Plaintiff's failure to file a Response to Defendant's Motion to Dismiss to explain these inconsistent statements, dismissal of Count One with regard to the "purported" statements made by Defendant to Mr. Gabriel is appropriate.

8

Plaintiff must include the third-party to whom the statements were made, as well as the time and place of the communication. *Andrews*, 109 N.C. App. at 274, 426 S.E.2d at 432; FED. R. CIV. P. 9(f); *Stutts*, 47 N.C. App. at 83, 266 S.E.2d at 866. Therefore, Plaintiff's allegations in support of his defamation claim with regard to statements made by Defendant to "various other customers or entities with which the Plaintiff was involved" are insufficient to overcome Defendant's Motion to Dismiss.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss Plaintiff's Defamation Claims is hereby **GRANTED**. Count One of Plaintiff's Amended Complaint is hereby **DISMISSED WITH PREJUDICE**.

Signed: February 10, 2006

Richard L. Voorhees
Chief United States District Judge

9